**DATA GENERAL CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**DIGITAL COMPUTER CONTROLS, INC., a Delaware corporation, and John N. Ackley, Defendants.**

Court of Chancery of Delaware, New Castle.

Dec. 13, 1971.

S. Samuel Arsht, Andrew B. Kirkpatrick, Jr., and Louis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Reavis & McGrath, New York City, for plaintiff.

Louis J. Finger, of Richards, Layton & Finger, Wilmington and Richard F. Horowitz, of Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, for defendants.

MARVEL, Vice Chancellor:

Data General Corporation seeks an order preliminarily enjoining the defendant Digital Computer Controls from making use of claimed trade secrets allegedly contained in design drawings which accompany certain sales of plaintiff's Nova 1200 computer, defendant having acquired such a computer with accompanying drawings from one of plaintiff's customers. This is the decision of the Court on plaintiff's motion for a preliminary injunction as well as on defendants' cross-motion for summary judgment of dismissal of the present action.

The relevant facts thus far adduced are as follows: During the past several years plaintiff has developed and marketed successfully small general-purpose computers to which they have given the name Nova, a large part of plaintiff's research and development budget for the past several years having been allocated to the development of such small computers, which, the parties agree, are the only ones of their type presently being profitably marketed, there having been no device on the market comparable to plaintiff's machines until defendant's entry on the scene.

When a sale of a Nova 1200 computer is made, plaintiff makes available at no extra cost to those customers who wish to do their own maintenance the design or logic drawings of the device sold, in this case a Nova 1200 computer. Such type of maintenance has been found to be desired by some customers in order to avoid periods of unproductive delay while waiting for repairs to be made by plaintiff's trained personnel.

Design drawings made available to customers are furnished subject to the terms of a non-disclosure clause contained in a paper which accompanies a purchase agreement. Furthermore, all drawings bear a legend to the effect that they contain proprietary information of the plaintiff which is not to be used by a purchaser for manufacturing purposes. However, the Nova 1200 is not patented, and its design drawings have not been copyrighted.

In April, 1971, the defendant Ackley, the president of Digital, purchased for his company from a customer of Data General, namely Mini-Computer Systems, Inc., a Nova 1200 computer which the latter had earlier acquired from plaintiff. Although the exact circumstances surrounding such sale are not entirely clear on the present record, the corporate defendant's president, in consummating such purchase, acquired a set of design drawings of the Nova 1200, said drawings having been furnished to Mini-Computer by the plaintiff in order to facilitate maintenance by the former of its Nova 1200's. The corporate defendant thereafter proceeded to use such design

drawings as a pattern for the construction of a competing machine which it is now about to market, the corporate defendant's president conceding that only minor changes have been made in the basic design of plaintiff's device in the course of the development of defendant's comparable computer.

## I.

■ Defendants' basic ground for opposing plaintiff's motion for a preliminary injunction and in support of their own motion for summary judgment is that inasmuch as the plaintiff has not secured either patent or copyright protection for its product, federal patent and anti-trust laws prevent this Court from granting relief for the protection of alleged trade secrets contained in a product which has been generally available in the recent past to the public, citing Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, and United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249.

The Sears and Compco cases involved attempts by a state to prevent by statute the copying of articles which are sold to the public but which are not patented or copyrighted. In the first cited case it appears that Sears, Roebuck & Co. had marketed a copy of a standing lamp which had been designed and marketed by another company. The court held that in light of the federal patent statutes and the policy expressed therein, a state is precluded from preventing the copying of any article sold to the public which is not the subject of a patent or a copyright. The holding of the Compco case is to the same effect.

The decision in the Schwinn case, on the other hand, is governed by the federal laws controlling monopoly, the defendant Schwinn having attempted to restrict the market to which his distributors could resell defendant's merchandise. The court held that once an unprotected article has been sold, the seller may no longer restrict its use and that an attempt so to do is violative of the Sherman Act.

On the basis of these rulings, defendants argue that since plaintiff has not received patent or copyright grants for its computer, this Court may not provide protection to plaintiff from efforts of the present defendant to copy and improve its computer. However, defendants fail to note that none of the cited cases was concerned directly with the question of trade secret, the articles there involved, the use or copying of which was sought to be enjoined, being within the public domain. Cases since decided have recognized this distinction. Thus in Schulenberg v. Signatrol, Inc., 33 Ill.2d 379, 212 N.E.2d 865, cert. denied 383 U.S. 959, 86 S.Ct. 1225, 16 L.Ed.2d 302, the Supreme Court of Illinois held that:

> "Sears has in fact been distinguished on this very basis, in Servo Corporation of America v. General Electric Co., (4th Cir., 1964) 337 F.2d 716. It was there held that one could not take advantage of a confidential relationship and pirate another's trade secrets without responding in damages—even though the finished product was unpatentable and could be copied by legal means. It is readily apparent that the Sears and Compco cases do not cover a situation of industrial espionage * * * "

## II.

■ Defendants' other arguments are accordingly based on the law of trade secrets. Thus, in order for the plaintiff to establish its right to relief here, it must demonstrate (1) the existence of a trade secret and that the corporate defendant has either (2) received the information within the confines of a confidential relationship and proposes to misuse the information in violation of such relationship, or (3) that the corporate defendant improperly received the information in question in such a manner that its confidential nature should have been known to it and that it nonetheless proposes to misuse such information.

Trade secrets have been defined in Restatement, Torts § 757, comment b. as follows:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."

Defendants insist, however, that plaintiff has not maintained that degree of secrecy which will preserve its right to relief, either by publicly selling an article alleged to contain a trade secret, or by failing to restrict access to the design drawings for its device, arguing that matters of common knowledge in an industry may not be claimed as trade secrets.

■ It has been recognized in similar cases that even though an unpatented article, device or machine has been sold to the public, and is therefore subject to examination and copying by anyone, the manner of making the article, device or machine may yet constitute a trade secret until such a copy has in fact been made, Schulenburg v. Signatrol, Inc., 33 Ill.2d 379, 212 N.E.2d 865, and Tabor v. Hoffman, N.Y., 118 N.Y. 30, 23 N.E. 12.

■ Defendants contend, however, that the issuance by plaintiff of copies of design drawings to its customers was made without safeguards designed properly to maintain the secrecy requisite to the existence of a trade secret. In other words, it is contended that plaintiff's attempts to maintain secrecy merely consisted of (1) not giving copies of the design drawings to those customers who did not need them for maintenance of their computer, (2) obtaining agreements not to disclose the information from those customers who were given copies of the drawings, and (3) printing a legend on the drawings which contained the allegedly confidential information which identified the drawing as proprietary information, the use of which was restricted. Plaintiff argues, however, that disclosure of the design drawings to purchasers of the computer is necessary properly to maintain its device, that such disclosure was required by the very nature of the machine, and that reasonable steps were taken to preserve the secrecy of the material released. I conclude at this preliminary stage of the case that it cannot be held as a matter of law that such precautions were inadequate, a factual dispute as to the adequacy of such precautions having clearly been raised. Defendants' motion for summary judgment must accordingly be denied.

■ Finally, I am satisfied that if plaintiff were to prevail at final hearing, it would only be entitled to injunctive relief during that undetermined period of time which would be required for defendants substantially to reproduce to plaintiff's device without its accompanying drawings. Such period of time would, on the present record, vary according to the number of man hours devoted to so-called reverse engineering. Thus, the granting of a preliminary injunction at this juncture would grant plaintiff all the relief it might hope ultimately to obtain after final hearing. Compare Thomas C. Marshall, Inc. v. Holiday Inn, Inc., 40 Del.Ch. 77, 174 A.2d 27. In addition, while plaintiff has presented evidence of its attempts to preserve the secrecy of the alleged secrets it now seeks to have protected by injunction, it has not adduced sufficient evidence to establish that likelihood of ultimate success on final hearing which would entitle it to the issuance of a preliminary injunction.

On notice, an order may be presented denying defendants' motion for summary judgment as well as plaintiff's motion for a preliminary injunction, which order shall also include a provision that all drawings issued by the corporate defendant in connection with the sale of its Nova-type computer contain a restrictive legend of the type now set forth on plaintiff's drawings here in issue.